**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ELECTRONIC FRONTIER FOUNDATION** | ) | |
| | ) | |
| Plaintiff, | ) | **Consolidated Cases** |
| | ) | |
| v. | ) | Civil Action No. 06-1988 (ESH) |
| | ) | |
| **DEPARTMENT OF HOMELAND SECURITY** | ) | Civil Action No. 06-2154 (RBW) |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

The parties' cross-motions for partial summary judgment present four issues: (1) whether requests for expedited processing are excepted from the general rule requiring exhaustion of administrative remedies; (2) whether plaintiff Electronic Frontier Foundation ("EFF") is "primarily engaged in disseminating information;" (3) whether there existed an urgency to inform the American public about the Interim Agreement; and (4) whether there existed an urgency to inform the American public about the Automated Targeting System ("ATS"). For the reasons set forth below, defendant submits that the answer to each of these questions is "no," and that plaintiff is therefore not entitled to expedited processing of any of its FOIA requests.

Plaintiff's arguments to the contrary are unpersuasive. Plaintiff fails to address the sound reasons, grounded in both the text and the policy of the Freedom of Information Act ("FOIA"), for not excepting requests for expedited processing from the general rule requiring exhaustion of administrative remedies. Likewise, contrary to plaintiff's assertion, its status as a member of the news media does not rebut the plain fact that plaintiff is "primarily engaged" in litigation, not in disseminating information. Nor has plaintiff demonstrated that there is an urgency to inform the

American public about the subject matter of its requests.  Plaintiff's opposition brief merely

reinforces defendant's argument that the Interim Agreement is a subject of interest—if at

all—among the European public, and not the American public.  Finally, plaintiff fails to

demonstrate that the subject matter of its ATS requests was a matter of current exigency to the

American public at the time of the requests.  Accordingly, defendant's motion for partial

summary judgment should be granted, and plaintiff's motion for partial summary judgment

should be denied.

## ARGUMENT

### A.    Administrative Exhaustion of Requests for Expedited Processing Should Be Required

Plaintiff argues that a requester does not need to appeal a denial of expedition before

filing suit in district court because a request for expedition allegedly does not fall under 5 U.S.C.

§ 552(a)(6)(A)(ii), a request for records.  See Plaintiff's Opposition to Defendant's Motion for

Partial Summary Judgment and Reply in Support of Plaintiff's Motion for Partial Summary

Judgment ("Pl. Opp.") at 1-11, specifically at 6 n.5.  However, plaintiff ignores the fact that a

federal court also does not have jurisdiction over a challenge to a denial of a fee waiver until the

requester has exhausted its administrative remedies.  See Defendant's Memorandum in Support

of its Motion for Partial Summary Judgment and in Opposition to Plaintiff's Motion for Partial

Summary Judgment ("Def. Mem.") at 21 (citing Oglesby v. United States Dep't of the Army,

920 F.2d 57, 66 (D.C. Cir. 1990) ("[e]xhaustion does not occur until the required fees are paid or

an *appeal is taken from the refusal to waive fees*") (emphasis added)); see also Pruitt v.

Executive Office for the United States Attorneys, Dep't of Justice, Case No. 01-5453, 2002 WL

1364365, at *1 (D.C. Cir. April 19, 2002) (per curiam) ("the district court properly dismissed

appellant's challenge to the fee waiver denial for failure to exhaust administrative remedies.").

In Oglesby, the Court found that the FOIA statute's exhaustion requirement, 5 U.S.C. § 552(a)(6)(A)(ii), applied in FOIA situations beyond a challenge to a denial of records.  See Judicial Watch v. Rossotti, 326 F.2d 1309, 1310 (D.C. Cir. 2003) ("[r]equesters may seek judicial review of denials of fee waivers only after exhausting specified administrative remedies") (citing 5 U.S.C. § 552(a)(6)(A)(i), (ii) and Oglesby, 920 F.2d at 61-62); Edmonds Institute v. U.S. Dep't of Interior, 460 F.Supp.2d 63, 68 n.2 (stating that Oglesby applied "administrative exhaustion requirements of § 552(a)(6) to denials of fee-waiver requests"). Therefore, if a requester receives "an adverse determination before bring suit, he must pursue the matter through the agency appeal process, set out in  5 U.S.C. § 552(a)(6)(A)(ii).  Once the head of the agency has made a determination on appeal or the twenty-day statutory deadline for the appeal decision has passed, he may bring suit in federal district court pursuant to  5 U.S.C. § 552(a)(4)(B)." Oglesby, 920 F.2d at 71; see also Judicial Watch v. Rossotti, 326 F.2d at 1310.[1]

The FOIA states that a challenge to agency action regarding a denial of expedition is "subject to judicial review under paragraph (4)." 5 U.S.C. § 552(a)(6)(E)(iii).[2]  The referenced paragraph (4) contains the standard for judicial review of fee waiver determinations in district

---

[1]Therefore, the statute has a specific time-frame of twenty days for when an agency must respond to an appeal of an adverse decision before a requester is considered to have constructively exhausted.  This applies in the expedition context in the same way it applies in the fee waiver context.

[2]The only manner in which review of expedited processing sections might be said to diverge from paragraph (4) is that "judicial review [of expedition denials] shall be based on the record before the agency *at the time of the determination*," 5 U.S.C. § 552(a)(6)(E)(iii) (emphasis added), and not merely "on the record before the agency." 5 U.S.C. § 552(a)(4)(A)(vii); see also Al-Fayed, 254 F.3d at 305.

court.  See 5 U.S.C. § 552(a)(4)(A) and (B).  The judicial review of a denial of records is governed by the same provision as a denial of expedition.  See 5 U.S.C. § 552(a)(6)(A)(ii) ("[i]f on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person making such request of the provisions for judicial review of that determination *under paragraph (4)* of this section") (emphasis added).  Thus, the provision governing judicial review of expedition determinations also governs judicial review of both a denial of fee waivers and a denial of a request for records.

The basis for administrative exhaustion is even stronger in an expedition context than it is in a fee waiver context.  The fee waiver provision in the statute does not reference any process for an appeal.  See 5 U.S.C. § 552(a)(4)(A)(vii) ("In any action by a requester regarding the waiver of fees under this section, the court shall determine the matter de novo: *Provided*, That the court's review of the matter shall be limited to the record before the agency.").  Nevertheless, as stated above, a requester must go through the administrative appeals process before bringing a claim in district court.  In contrast, the provision governing judicial review of expedition determinations specifically mandates appeals for denials of expedition.  See 5 U.S.C. § 552(a)(6)(E)(iii) ("[a]gency action to deny or affirm denial of a request for expedited processing pursuant to this subparagraph, and failure by an agency to respond in a timely manner to such a request shall be subject to judicial review").  As defendant explained in its opening brief, this provision should be read as contemplating three different scenarios: (1) the constructive exhaustion of an agency not responding to an appeal ("deny"); (2) agency denying an appeal ("affirm denial"): and (3) an agency not responding to the initial request for expedition ("failure by an agency to respond in a timely manner").  See Def's Mem. at 19.  In all three of these

- 4 -

scenarios, a requester is required to appeal a denial of expedition unless the request has been

constructively exhausted by the agency's failure to respond.

In the 1996 amendments to the FOIA, Congress specifically used the same paragraph (4)

to govern the procedures for district court challenges to denials of expedition requests as it did

for challenges related to denial of fee waivers and denial of records.  See 5 U.S.C. §

552(a)(6)(E)(iii).  These amendments were enacted six years after the D.C. Circuit held in

Oglesby that a requester must administratively exhaust challenges to fee waiver denials in the

same way a requester must exhaust a challenge to a denial of records.  See Oglesby, 920 F.2d at

61-61, 66, 71.  It must be presumed that Congress was aware of this case law, and its failure to

specifically exempt challenges to expedition denials from the requirements of administrative

exhaustion indicates its intent to retain this requirement.  See Miles v. Apex Marine Corp., 498

U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes

legislation.") (citing Cannon v. University of Chicago, 441 U.S. 677, 696-697 (1979)).

The D.C. Circuit has stressed the important policies underlying FOIA's exhaustion

requirement in Hidalgo v. FBI, 344 F.3d 1256, 1258-59 (D.C. Cir. 2003), and they apply in the

context of expedition.  See Def's Mem. at 22 (citing Hidalgo, 344 F.3d at 1259-1260).  In its

opposition brief, plaintiff ignores one of the primary policy rationales for requiring exhaustion:

to preserve the "agency's power to correct or rethink initial misjudgments or errors."  Hidalgo,

344 F.3d at 1260.  Allowing agencies the opportunity to correct mistaken judgments prevents

district courts from being unnecessarily inundated with litigation.  As for plaintiff's argument

that an appeal would be unnecessary because "the agency has already had an opportunity to fully

consider plaintiff's argument in support of expedition," the same could be said for challenging

fee waiver denials (or any other administrative decision).  See Pl. Opp. at 9.

There is also a fallacy in plaintiff's argument.  In an appeal, a requester would have the opportunity to address the concerns that the agency expressed in its denial letter and explain why the initial request covered those concerns.  The agency would have a chance to reconsider the matter and federal courts would not have its dockets filled with unnecessary litigation.  As "[t]he Supreme Court has explained[,] . . . courts generally require administrative exhaustion 'because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency.'"  Boivin v. U.S. Airways, Inc., 446 F.3d 148, 155 (D.C.Cir. 2006) (quoting McCarthy v. Madigan, 503 U.S. 140, 145 (1992)).

Plaintiff is also incorrect that requiring administrative exhaustion of a denial of expedition "would frustrate Congress' intent that expedition disputes be quickly resolved."  Pl. Opp. at 9.  In fact, an exhaustion requirement might have the opposite effect.  If a requester was to prevail on its appeal, then the issue of expedition would be resolved much more quickly than having to go to district court and have the parties brief the matter.  See 5 U.S.C. § 552(a)(6)(E)(ii)(II) (agencies are required to promulgate regulations that provide for "expeditious consideration of administrative appeals of such determinations of whether to provide expedited processing.").

**B.    Plaintiff is Not Primarily Engaged in Disseminating Information**

Plaintiff's argument that it is "primarily engaged in disseminating information" is based on the acknowledged fact that it "publish[es] . . . news to the public" through its web site.[3]  As

---

[3]Although EFF published books during the 1990s, it has not published news through a medium other than its web site since 1998.  Interim Agreement Request at 4.

defendant argued in its opening brief, while this fact may entitle EFF to status as a

"representative of the news media," it does not satisfy EFF's burden of demonstrating that it is

"primarily engaged in disseminating information."  Unlike the requirements for news media

status, which are "broadly interpreted," Nat'l Sec. Archive v. Dep't of Def., 880 F.2d 1381, 1386

(D.C.Cir. 1989) (citing 132 Cong. Rec. S14298), the requirements for demonstrating that one is

"primarily engaged in disseminating information" must be narrowly interpreted to avoid unfairly

disadvantaging those requesters who have not sought expedited treatment, and those requesters

who truly are entitled to expedited processing of their FOIA requests.  See Al-Fayed, 254 F.3d at

310 (citing H.R. Rep. No. 104-795, at 26).  Thus, if these two standards are conflated, as plaintiff

is proposing, agencies will be forced to choose between two alternatives, either of which

contravenes congressional intent: (i) do not generously grant news media status to avoid

generous grants of expedited processing, which is contrary to Congress's intent when it passed

the Freedom of Information Reform Act ("FIRA") in 1986, or (ii) generously grant status as one

"primarily engaged in disseminating information" to avoid restricting the grant of fee waivers,

which is contrary to the legislative intent of the 1996 E-FOIA amendments.  By contrast, giving

these standards independent meaning, as defendant suggests, will allow agencies to fulfill the

purpose of both statutes.

        Contrary to plaintiff's assertion, Department of Homeland Security ("DHS") regulations

do not treat the two standards as interchangeable.  A person is a "representative of the news

media" if he or she is "actively gathering news for an entity that is organized and operated to

publish or broadcast news to the public."  6 C.F.R. § 5.11(b)(6).  The fact that a person is

"actively gathering news" for such an entity does not mean that he or she is a "full-time member

of the news media" or that "he or she is a person whose main professional activity or occupation is information dissemination," the standard for who is "primarily engaged in disseminating information."  6 C.F.R. § 5.5(d)(3).  Indeed, the main professional activity of both Mr. Sobel and Ms. Hoffman, who submitted the FOIA requests at issue on behalf of EFF, is the practice of law. Therefore, they clearly do not fulfill the requirements of 6 C.F.R. § 5.5(d)(3).

Nor does EFF's status as "an entity that is organized and operated to publish or broadcast news to the public" lead to the presumption, as plaintiff argues, that it is "a full-time member of the news media." Id.  To begin with, Plaintiff's argument that an organization such as EFF is a "full-time member of the news media" independent of its employees who request information on its behalf is not supported by the regulation, which uses only the feminine and masculine pronouns ("he or she"), suggesting that only human beings are "full-time members of the news media." Id.  Furthermore, as defendant argued in its opening memorandum, the regulations specifically contemplate that entities like EFF could have a news dissemination function that is not the entity's only or primary function. See 6 C.F.R. § 5.11(b)(6) ("[A] request for records supporting the news-dissemination function of the requester shall not be considered to be for a commercial use.").  Finally, if the regulations intended to adopt a presumption that a "representative of the news media" was also "primarily engaged in disseminating information" it could have easily done so, as it did elsewhere. See 6 C.F.R. 5.11(k)(2)(iii) (adopting presumption that a "representative of the news media" will satisfy the requirement for a public interest fee waiver that the "requested information will contribute to the 'public understanding.'").  The regulations did not adopt this presumption, and this Court should not adopt one either.

Nor do the cases cited by plaintiff provide persuasive authority for its position.  Plaintiff relies, in part, on a single sentence contained in a footnote of this Court's decision in <u>ACLU v. DOJ</u>, 321 F.Supp.2d 24, 29 n.5 (D.D.C. 2004), finding that the Electronic Privacy Information Center ("EPIC") is "primarily engaged in disseminating information."  As the footnote makes clear, however, the government did not contest EPIC's status, and therefore this issue was not fully argued by the parties.  This is too slender a reed to support plaintiff's asserted entitlement to status as one "primarily engaged in disseminating information."

Likewise, <u>Leadership Conference on Civil Rights v. Gonzales</u>, 404 F.Supp.2d 246 (D.D.C. 2005), does not support plaintiff's position.  As the district court's opinion clearly states, the mission of the Leadership Conference on Civil Rights ("LCCR") "is to serve as the site of record for relevant and up-to-the minute civil rights news and information."  <u>Id.</u> at 260 (citing http://www.civilrights.org/about.lccr).  By contrast, as plaintiff clearly states on its website, its primary mission is to "fight[] for freedom *primarily in the courts*, bringing and defending *lawsuits* even when that means taking on the U.S. government or large corporations."  <u>See</u> About EFF (attached as Exhibit 5 to defendant's motion for partial summary judgment) (emphasis added); <u>see also</u> <u>id.</u> ("EFF is a donor-funded nonprofit and depends on your support to continue successfully defending your digital rights.  *Litigation is particularly expensive*; because two-thirds of our budget comes from individual donors, every contribution is critical *to helping EFF fight – and win – more cases*.") (emphasis added); Guidestar Basic Report, Electronic Frontier Foundation at 2-3 (attached as Exhibit 6 to defendant's motion for partial summary

judgment).[4]  Thus, unlike the LCCR, plaintiff's "main activity" is not "information

dissemination," H.R. Rep. No. 104-795, at 26.  Rather, like the ACLU of Northern California,

plaintiff's main activity is litigation.  See <u>ACLU-NC v. Dep't of Justice</u>, Case No. C 04-4447,

2005 WL 588354, at *14 (N.D.Cal. March 11, 2005).  Therefore, plaintiff is not "primarily

engaged in disseminating information," a sufficient reason to affirm the denial of all of plaintiff's

requests for expedited processing.

C.    **Plaintiff Failed to Demonstrate an Urgency to Inform the American Public
      About the Interim Agreement**

Plaintiff does not dispute that the news articles it submitted in support of its request for

expedited processing of its Interim Agreement Request do not demonstrate the American

public's interest in the subject matter of this request.[5]  Plaintiff, who bears the burden of proving

---

[4]Plaintiff protests the submission by defendant of these exhibits demonstrating that EFF
is primarily engaged in litigation.  This protest is meritless.  These exhibits are pages of web
sites quoted and cited in plaintiff's FOIA requests, and are therefore properly considered part of
the agency "record."  Thus, pages from EFF's web site are properly part of the record because
the web site is referred to extensively in plaintiff's FOIA requests.  See, e.g. Exhibit A to
plaintiff's motion for partial summary judgment at 3 (hereinafter "Interim Agreement Request")
("EFF maintains a frequently visited web site, http://www.eff.org"); Exhibit E to plaintiff's
motion for partial summary judgment at 3 (hereinafter "First ATS Request") (same); Exhibit F to
plaintiff's motion for partial summary judgment at 4 (hereinafter "Second ATS Request")
(same).  Likewise, all three of plaintiff's FOIA requests quote from and cite to its Guidestar
Basic Report, which was attached as Exhibit 6 to the Coleman Declaration.  Compare Coleman
Declaration ¶ 7 <u>with</u> Interim Agreement Request at 3 & n.7; First ATS Request at 2 & n.2, 3;
Second ATS Request at 4 & n.1, 2.

[5]Contrary to plaintiff's assertion, the submission by defendant of Google News searches
on truly newsworthy topics was not intended to supplement the "record," which is properly
limited to the material before the agency "at the time of the determination." 5 U.S.C.
§ 552(a)(6)(E)(iii); H.R. Rep. No. 104-795, at 25 ("This section limits judicial review to the
same record before the agency on the determination of whether to grant expedited processing.").
Instead, these exhibits were simply intended to assist the Court in its *de novo* review of the
adequacy of plaintiff's requests, by placing the record into proper context.  Defendant submits
that the record produced by plaintiff is plainly inadequate irregardless of whether the Court

- 10 -

its entitlement to expedited processing, refers generally to the debate surrounding the transfer of PNR data but ignores the significant, undisputed and material fact that there is no dispute that the transfer of PNR data conforms with U.S. law, but only a dispute as to whether such transfer conforms with European law.

Thus, plaintiff has failed to address the most serious defect in its argument in support of expedited processing of the Interim Agreement request: The Interim Agreement, by its own terms, "is not intended to derogate from or amend legislation of the United States of America or the European Union or its Member States," nor does it "create or confer any right or benefit on any other person or entity, private or public."  Interim Agreement at Art. 7, 72 Fed. Reg. at 349. The government's authority to receive PNR data and its legal obligations with respect to the treatment of PNR data are governed by validly enacted statutes, validly promulgated regulations, and validly issued Executive Orders.  See, e.g., 49 U.S.C. § 44909(c); 19 C.F.R. § 122.49d; 6 U.S.C. § 485(b)(1); Exec. Order No. 13,388, 70 Fed. Reg. 62,023, 62,023 (October 25, 2005). Thus, the government activity that concerns privacy advocates such as EFF is governed by settled domestic law, and is not affected by the Interim Agreement.[6]  For this reason, the subject

---

considers the characteristics of Google News.

[6]Plaintiff contends that the proposition that "'[i]n the United States, the particular debate over the transfer of PNR data to the government came to a head and was resolved in November 2001' with the passage of the Aviation and Transportation Security Act" is both "wishfull[]" and "without any apparent support." Pl. Opp. at 19.  This statement demonstrates profound ignorance of how this country resolves debates over the proper scope of federal government action in defense of our national security.  These questions are resolved by our democratically elected representatives in Congress, which has enacted, among other laws, the Aviation and Transportation Security Act of 2001.  See U.S. Const. art. I.  This fact explains why FOIA requests concerning pending legislation, which *will* affect the authority of the federal government, are sometimes granted expedited processing.  See, e.g., ACLU v. Dep't of Justice, 321 F.Supp.2d 24, 30 (D.D.C. 2004) (granting expedited processing for FOIA request

matter of plaintiff's Interim Agreement Request is not a matter of "current exigency to the American public," nor would processing plaintiff's request in the ordinary course "compromise a significant recognized interest."  Al-Fayed, 254 F.3d at 310.

Unable to demonstrate any interest in its request among the American public, plaintiff now contends that the Interim Agreement is "particularly controversial in Europe," and that this "foreign discontent" is of "consequence to the American public."  Pl. Opp. at 19.  As noted in defendant's original brief, however, plaintiff has failed to demonstrate that this alleged "foreign discontent" is itself a matter of "current exigency to the American public."  Def. Mem. at 33-34. Indeed, the record reveals that the dispute between the EU and the United States was resolved in the same amicable manner that typifies the resolution of countless differences of opinion on a great number of issues.  See Exhibit D to plaintiff's motion for partial summary judgment at 2 (hereinafter "Chertoff Speech") (Secretary Chertoff stating that the debate over the Interim Agreement was "resolved . . . with an agreement which I think does address the principal concerns that we have."); Interim Agreement at Art. 6, 72 Fed. Reg. 348, 349 (Jan. 4, 2007) ("For purposes of applying this Agreement, DHS is deemed to ensure an adequate level of protection for PNR data transferred from the European Union concerning passenger flights in foreign air transport.").

Unable to dispute the facts recited above, plaintiff is reduced to relying on a speech delivered by Secretary Chertoff to the Federalist Society on November 17, 2006.  This speech does not support plaintiff's position, but merely reinforces defendant's argument that the Interim

concerning soon-to-expire Section 215 of the Patriot Act); Leadership Conference on Civil Rights v. Gonzales, 404 F.Supp.2d 246, 260 (D.D.C. 2005) (granting expedited processing to request concerning the soon-to-expire Voting Rights Act).

Agreement is a matter of importance—if at all—to the European public, not the American public. Indeed, Secretary Chertoff's speech was intended to (1) draw the audience's attention to instances in which foreign governments and entities attempt to impose restraints on settled American law "based on their conception of either international law or transnational law," and (2) encourage the audience to promote the concept of "judicial modesty" beyond American borders.[7] Chertoff Speech at 2. The negotiation of the Interim Agreement is just one example Secretary Chertoff uses to illustrate how foreign or international law may conflict with domestic law; his remarks were in no way directed towards the privacy issues of concern to plaintiff or any American debate on those issues. Id. Indeed, the "very substantial debate" noted by Secretary Chertoff was a debate between officials of the EU and the United States—not within the American polity—a fact amply demonstrated by Secretary Chertoff's inability to assume that even this specialized audience of lawyers was familiar with the Interim Agreement. Id. ("Some of you may have followed in the press that there was a difference of opinion between the European Union and the United States about the use of something called passenger name record data."). Furthermore, Secretary Chertoff's comments are not contrary to the undisputed fact that the Interim Agreement conforms to American law and has been vetted and agreed to by the European Union. In sum, Secretary Chertoff's speech does not support plaintiff's request for expedited processing of the Interim Agreement Request, and therefore this Court should affirm

---

[7]The debate within the legal community that comprised the substance of Secretary Chertoff's speech—the extent to which domestic law should incorporate or conform to international or foreign law—is of some interest to lawyers gathered for the Federalist Society meeting, but plaintiff has not demonstrated that this debate, or agency records which might provide context to one instance of this debate, is a matter of current exigency to the American public at large.

the agency's denial of that request.

**D.    Plaintiff Failed to Demonstrate an Urgency to Inform the American Public About the Automated Targeting System**

Plaintiff claims that at the time DHS denied plaintiff's December 6, 2006 request for expedited processing,[8] the issue of ATS was a matter of current exigency to the American public because the "deadline for public comments on the ATS was still more than two weeks away." See Pl. Opp. at 21.  However, this argument ignores the fact that an agency does not process a request overnight even if it grants expedited processing.  Instead, the agency processes the request "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii).  Given the timing and breadth of the aggregated ATS request, it was not practicable for the agency to process the request before the December 29th deadline for public comments on DHS's ATS Privacy Act notice.  See Second ATS Request (including a combined total of eighteen paragraphs and subparagraphs).  Plaintiff even submitted its December 6th Request for expedited processing fewer than twenty business days before the close of the public comment period to the Privacy Act notice.[9]  The December 29th deadline was sixteen business days after plaintiff submitted its request.  An agency has twenty business days to respond to a request.  See 5 U.S.C. § 552(a)(6)(A)(i) (each agency shall "determine within twenty days (excepting Saturdays, Sundays and legal public holidays) after

---

[8]The December 6, 2006 ATS request incorporated the November 7, 2006 ATS.  Compare First ATS Request with Second ATS Request.  In its December 14, 2006 denial of expedition, DHS "aggregated [the two requests] to simplify processing."  See letter from DHS to EFF, dated December 14, 2006 ("DHS Consolidated Response") (attached as Exhibit G to plaintiff's motion for partial summary judgment).

[9]Plaintiff had also submitted its First ATS Request on November 7, 2006, fewer than twenty days prior to the closing of the public comment period to the Privacy Act notice.  See Def. Mem. at 36.  The closing date was later extended from December 4, 2006 to December 29, 2006.  See id. at 35 n.22.

the receipts of any such request whether to comply with such request.").

Even if the agency could have miraculously processed the request before the December 29th deadline, the rationale for the requested relief is no longer applicable.  See Def's Mem. at 35-36 (quoting Long v. Dep't of Homeland Sec., 436 F.Supp.2d 38, 43 (D.D.C. 2006) ("the deadline for filing . . . has expired [and] [t]hus, it cannot be said that plaintiffs' request concerns 'a matter of current exigency' or that the consequences of DHS delaying a response 'would compromise a significant recognized interest'")).  Contrary to plaintiff's suggestion, this argument is not intended to "encourage agencies to delay decisions on expedited processing." Pl. Opp. at 21.  Rather, this argument rests on the sound proposition that a Court should not fashion relief when the rationale for that relief is now moot.  And, the issue of the December 29, 2006 deadline is now moot.[10]

Plaintiff has implicitly acknowledged that its second rationale for expedited processing, the need to "facilitate full and informed public comment and debate on [the ATS] . . . prior to the Congressional consideration of the system when the new Congress convenes in January," does

---

[10]Plaintiff's references to a Notice of Proposed Rulemaking ("NPRM") relating to ATS is outside the record and should not be considered by this Court.  See Pl. Opp. at 23.  Judicial review of expedited processing "shall be based on the record before the agency at the time of the determination."  5 U.S.C. § 552(a)(6)(E)(iii).  Based on plaintiff's request for expedited processing, the agency had no way of knowing that plaintiff was interested in the ATS to respond to a NPRM.  Plaintiff did not present the issue of a potential NPRM as a rationale for expedited processing.  At the time of the request, plaintiff had the opportunity to present this issue as it was aware of the legal authority it now cites for the proposition that there should be a notice of proposed rulemaking.  See Pl. Opp. at 23 n.20.  In fact, plaintiff's counsel was even the one who asked the agency about the potential NPRM.  See Exhibit L to Pl. Opp.  In any event, plaintiff claims the alleged potential notice relates to a possible exemption of ATS from the Privacy Act.  See Pl. Opp. at 23 n.20.  If faced with this rationale, the agency might still have found that plaintiff did not have an urgency to inform the American public about a potential NPRM that related to Privacy Act exemptions.

not rise to a sufficient level of exigency.  See Second ATS Request at 3-4.  As defendant

explained in its opening brief, plaintiff is merely seeking to contribute to a policy debate and that

is insufficient grounds for expedited processing.  See Def. Mem. at 37-39 (explaining that for an

urgency to exist there needs to be a specific time frame, such as the consideration of pending

legislation, associated with that public debate) (comparing Long, 436 F.Supp.2d at 43 with

ACLU v. DOJ, 321 F.Supp.2d 24, 29 (D.D.C. 2004) and Leadership Conference on Civil Rights

v. Gonzales, 404 F.Supp.2d 246, 260 (D.D.C. 2005)).

Plaintiff now tries to rely on the proposed Federal Agency Data Mining Reporting Act of

2007 as the pending legislation that creates the exigent circumstances.[11]  See Pl. Opp. at 21-23.

However, consideration of this proposed bill is outside the record because judicial review of

expedited processing "shall be based on the record before the agency at the time of the

determination."  5 U.S.C. § 552(a)(6)(E)(iii).  Based on plaintiff's request for expedited

processing, the agency had no way of knowing about the potential Federal Agency Data Mining

Reporting Act of 2007.  In any event, the potential bill is not aimed at ATS specifically but

rather has the broad objective of requiring "federal agencies to report to Congress about its data

mining programs."  See Exhibit I to Plaintiff's Memorandum in Support of its Partial Motion for

Summary Judgment ("Pl. Mem.") at 3.  Therefore, the agency never had the opportunity to

---

[11]Plaintiff also tries to argue that special consideration should be given to the
congressional interest in ATS because "one of the senators was the incoming Chairman of the
Senate Judiciary Committee and the congressman was the incoming Chairman of the House
Homeland Security Committee."  See Pl. Opp. at 22.  However, the fact that committee chairmen
made such statements does not mean that the issue rises to the level of exigency for the
American public.  Otherwise, any issue that is raised by a committee chairman would warrant
expedited processing even if no one else had even heard of the issue.  As defendant pointed out
in its last brief, plaintiff only cited the interest of two senators and a congressman.  See Def's
Mem. at 38.

determine whether a proposed bill relating to congressional oversight meant that the ATS requests merited expedited processing.

Plaintiff has not just failed to show that ATS is a matter of "current exigency to the American pubic" but also has failed to show that the American public even has a great interest in the subject.  See H.R. Rep. No. 104-795, at 26 (1996) (for a requester to be meet the "urgency to inform standard" for expedited processing, the requested material should, *inter alia*, pertain to a matter "of current exigency to the American public"); see also Al-Fayed, 254 F.3d at 310.  As defendant explained in its opening brief, "news coverage is insufficient for a plaintiff to demonstrate that there is an exigency in informing the public." Def. Mem. at 39 (citing Al-Fayed, 254 F.3d at 310 (subject, while "newsworthy," was not a matter of "current exigency")). Nevertheless, defendant has demonstrated that ATS has not received widespread attention in the media.  See Def. Mem. at 39-41.  Plaintiff discounts the attachments to defendant's motion for summary judgment that demonstrate this point as being outside the record.  See Pl. Opp. at 24. However, the point of those attachments was to show the unreliability of plaintiff's Google News search.  See Def. Mem. at 39-41.  Indeed, the attachments merely illustrate a fact that is evident from the face of plaintiff's own submissions to DHS at the time plaintiff submitted its FOIA requests: plaintiff's internet search is not limited to American media, and does not distinguish between established or widely read media outlets and, for example, websites maintained by a single individual and viewed by a small or non-existent audience, and therefore does not reliably measure the interest of the American public.  It is plaintiff's burden to shown that there is any urgency within the American public to find out about the ATS.  See Al-Fayed, 254 F.3d at 305 n.4.  An unreliable Google News search return is insufficient to show that the American public

has interest in the ATS, let alone that it rises to the level of exigency.[12]

Plaintiff has also not adequately responded to defendant's argument that no significant interest would be harmed by going through the normal FOIA process. See H.R. Rep. No. 104-795, at 26 (for a requester to be meet the "urgency to inform standard" for expedited processing, the requested material should, *inter alia*, pertain to a matter "that a reasonable person might conclude that the consequences of delaying a response to a FOIA request would compromise a significant interest"); see also Al-Fayed, 254 F.3d at 310 . As defendant explained, EFF has no specialized interest in lobbying Congress and the lack of any pending legislation dealing directly with ATS suggest EFF could still lobby Congress while receiving the information. Id. Def. Mem. at 41-42. Plaintiff has not explained what significant interest is at stake besides a general desire to be part of "'a meaningful and truly democratic debate.'" See Pl. Opp. at 24 n.21 (quoting Elec. Privacy Info. Ctr. v. DOD, 416 F.Supp.2d 30, 41 n.9 (D.D.C. 2006). However, "[t]he public's right to know, although a significant and important value, would not by itself be sufficient to satisfy" the "urgency to inform" standard. H.R. Rep. No. 104-795, at 26; Al-Fayed,

---

[12]Plaintiff also relies on Elec. Privacy Info. Ctr. v. DOD, 355 F.Supp.2d 98 (D.D.C. 2004), to argue that the DHS FOIA official should have been aware of an internal email from a DHS official that said "several media outlets were reporting" on the ATS. See Exhibit H to Pl. Mem.; Pl. Opp. at 24-25. However, in Elec. Privacy Info. Ctr. v. DOD, the issue was whether the agency was aware of a General Accounting Office ("GAO") report. Id. at 103 n.7. A GAO report is quite distinct from a single internal email. In deciding whether to grant expedited processing, the DHS FOIA officer cannot be expected to be aware of every internal email. Cf. Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003) (citations omitted) ("it is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate."). Therefore, this email is outside of the record and should not be considered by this Court. See 5 U.S.C. § 552(a)(6)(E)(iii). In any event, it does not even demonstrate that the American public had an exigent interest in the ATS. If the existence of several news inquiries was a sufficient basis for expedited processing, then any subject picked up by a few newspapers would warrant expedited processing.

- 18 -

254 F.3d at 310.

## <u>CONCLUSION</u>

For all of the foregoing reasons, and those set forth in defendant's opening memorandum, defendant respectfully requests that the Court grant its motion for partial summary judgment on plaintiff's claims for expedited processing and deny plaintiff's motion for partial summary judgment.

Dated: March 8, 2007

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
(D.C. Bar 418925)
Assistant Branch Director
U.S. Department of Justice
Civil Division, Federal Programs Branch

 _/s/ John R. Coleman_____
JOHN R. COLEMAN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
<u>Mailing Address</u>
P.O. Box 883
Washington, D.C., 20044
<u>Delivery Address</u>
20 Massachusetts Avenue, NW, Room 6118
Washington, D.C. 20530
Telephone: (202) 514-4505
Facsimile: (202) 616-8187
john.coleman3

/s/ _Adam D Kirschner_____
ADAM D. KIRSCHNER
Trial Attorneys
U.S. Department of Justice

Civil Division, Federal Programs Branch
<u>Mailing Address</u>
P.O. Box 883
Washington, D.C., 20044
<u>Delivery Address</u>
20 Massachusetts Avenue, NW, Room 7126
Washington, D.C. 20530
Telephone: (202) 353-9265
Fax: (202) 616-8470
adam.kirschner@usdoj.gov

Counsel for Defendant